IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LACHELLE WATSON | : | CIVIL ACTION |
| | : | NO. 19-1027 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DREXEL UNIVERSITY | : | |

**MEMORANDUM GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

EDUARDO C. ROBRENO, J.                        September 28, 2020

## Table of Contents

I.   INTRODUCTION ............................................... 1

II.  FACTUAL BACKGROUND ......................................... 2

III. LEGAL STANDARD ............................................. 9

IV.  DISCUSSION ................................................. 9

  A.  ADA and PHRA Claims ...................................... 9

    1.  Failure to accommodate ............................... 10

    2.  Disability discrimination ............................ 14

  B.  FMLA Claim ............................................... 19

  C.  Damages .................................................. 21

V.   CONCLUSION ................................................. 21

## I.   INTRODUCTION

This case involves claims by Lachelle Watson against her

former employer, Drexel University,[1] for alleged violations of:

---

[1]   Watson's Complaint (ECF No. 1) also named her union, Teamsters Local 115, as a defendant. The Court granted the union's motion to dismiss on July 24, 2019, with leave to amend (ECF No. 16). On August 1, 2019, Watson filed a Second Amended Complaint naming Drexel as the sole defendant (ECF No. 17).

(1) The Americans with Disabilities Act ("ADA"); (2) The Family and Medical Leave Act ("FMLA"); and (3) the Pennsylvania Human Relations Act ("PHRA"). On January 29, 2020, Drexel moved for summary judgment on all claims, as well as on the issue of damages.

For the reasons discussed below, the Court will grant Drexel's Motion for Summary Judgment with respect to Watson's substantive claims and deny as moot Drexel's Motion for Summary Judgment on the issue of damages.

## II.   FACTUAL BACKGROUND[2]

In September 2011, Drexel hired Watson as a custodian. Daryl Carlton, Drexel's Director of Custodial and Support Services, interviewed and hired Watson. Around May of 2016, Watson was diagnosed with leiomyoma, a benign condition of the fibroids and tumors in the uterus, which causes her to experience heavy bleeding and fatigue. When she experienced bleeding at work around the time of her diagnosis, she informed Carlton and told him she needed to take time off. Carlton encouraged her to apply for FMLA leave and directed her to contact the human resources department. Watson testified that she had no additional conversations with Drexel staff about

---

[2]     As required at the summary judgment stage, the Court views the facts "in the light most favorable" to Watson—the nonmoving party—and draws "all reasonable inferences" in her favor. Young v. Martin, 801 F.3d 172, 174 (3d Cir. 2015).

anything that would make it easier for her to work, and that she otherwise hid her illness "pretty well" and "did not let anyone know" about her condition. Statement of Undisputed Material Facts ("SUMF") ¶ 46 (ECF No. 24).

Watson applied for FMLA leave through Guardian Life Insurance of America, Drexel's designated carrier for FMLA benefits. Over the following year, Guardian alternately approved and denied Watson's FMLA leave requests as follows:

| June 2, 2016 — August 24, 2016: Approved | |
|---|---|
| June 2016 | Watson applied for intermittent FMLA leave from June 2, 2016, through August 24, 2016. |
| June 6, 2016 | Guardian advised Watson that she met the eligibility requirements for leave and that "supporting documentation must still be provided in order to make a determination" on her leave status. Id. Ex. J.<br><br>The letter informed Watson that if her leave request was for her own serious health condition, her physician must complete a Certification of Health Care Provider ("CHP") form. Guardian enclosed a copy of the form with the letter and informed Watson that she must return the form to Guardian within 15 days. |
| June 15, 2016 | Guardian advised Watson by letter that it had not received the CHP and again enclosed a blank copy. |
| June 17, 2016 | Watson's physician completed the CHP. On the certification, the physician indicated that Watson needed intermittent leave from June 2, 2016, through October 17, 2016, to undergo iron treatments. |

|  | Upon receiving the CHP, Guardian approved Watson's request for intermittent FMLA leave for the period in question.<br><br>Watson had no issues using this leave. |
|---|---|
| **August 24, 2016 — October 17, 2016: Approved** ||
| August 31, 2016 | Guardian notified Watson that she had 11.24 weeks remaining of eligible FMLA time, and Watson requested to extend her intermittent leave from August 24, 2016, to October 17, 2016.<br><br>Guardian approved Watson's request to extend her intermittent FMLA leave through October 17, 2016.<br><br>Watson had no issues using this leave. |
| **November 2, 2016 — May 17, 2017: Denied** ||
| August 31, 2016 | Watson requested another leave extension beginning October 18, 2016. Guardian advised Watson that she was approved for the extension through October 17, 2016, and eligible for an extension for the period of October 18, 2016, through November 30, 2016.<br><br>The letter informed Watson that "additional information and/or certification" may be required for approval of an extension until November 30. The letter directed her to an enclosed blank CHP, which stated: "The FMLA requires that you submit a timely, complete and sufficient medical certification to support a request for FMLA due to your . . . serious health condition." Id. Ex. O. |
| October 27, 2016 | Guardian alleges it sent Watson a letter informing her that it "had not received the requested forms to support your request for intermittent leave, initially submitted on . . . August 31, 2016," id. Ex. P., and again enclosed a blank CHP.<br><br>Watson testified that she did not receive this letter. |

| November 9, 2016 | Guardian sent Watson a letter informing her that it had denied her leave for the period October 18, 2016, through November 30, 2016, because the requested CHP was not returned. |
| | After receiving the letter, Watson called Guardian and told several representatives that her physician had already completed the CHP and submitted it to Guardian by fax. She testified that three Guardian representatives with whom she spoke advised her that they would investigate her concerns, but that no one followed up with her. |
| | Watson neither reached out to anyone else at Guardian to address this denial nor contacted Drexel human resources staff about it. |
| January 2017 | Watson requested another FMLA leave extension for the time period beginning December 1, 2016, through May 31, 2017. |
| January 11, 2017 | Guardian informed Watson that she was eligible for intermittent leave for the December 1, 2016, through May 31, 2017, time period. |
| January 31, 2017 | Guardian informed Watson that her request for intermittent leave for the period of October 18, 2016, through May 31, 2017, was denied because she had not returned a CHP.[3] |
| February 10, 2017 | Watson's physician completed a CHP indicating that Watson required intermittent FMLA leave from February 2, 2017, through May 2, 2017. However, the physician did not complete the section of the form detailing the frequency of the leave Watson required during that period. |
| February 28, 2017 | Guardian sent Watson a letter advising her that the CHP "did not contain all of the information necessary for [Guardian] to make a determination" about her requested leave because the physician had not completed the "Amount of Leave Needed" section of the CHP. Id. Ex. U. Guardian enclosed a blank CHP and |

---

[3]    In a subsequent letter to Watson dated May 19, 2017, Guardian identified the "denied" period as beginning November 2, 2016, and ending May 17, 2017.

|  | instructed Watson to "fill out the form, taking care to include the data listed as incomplete" and return it within seven days. <u>Id.</u> |
|---|---|
| March 13, 2017 | Guardian advised Watson that her request for leave for the time period of October 18, 2016, through May 31, 2017, was denied due to incomplete certification.<br><br>Upon receiving this letter, Watson contacted her physician, who stated that she would resubmit the form. Watson then called Guardian. The representative with whom she spoke advised her that Guardian had not received the certification and that the representative would look into the issue. No one from Guardian followed up with Watson.<br><br>Watson took time off from work and reported FMLA usage on eleven days during the period for which she had been denied leave. At no point did Watson seek accommodations other than FMLA leave. |
| **May 18, 2017 — May 31, 2017: Approved** ||
| May 18, 2017 | Another physician completed a CHP for Watson. The CHP sought to substantiate both past and future FMLA usage and indicated that Watson required intermittent leave from June 16, 2016, through May 17, 2018. |
| May 19, 2017 | Guardian denied Watson's leave for the time period beginning November 2, 2016, through May 17, 2017, due to incomplete certification and approved leave for the time period beginning May 18, 2017, through May 31, 2017. |

Around the time of Guardian's approval of Watson's final FMLA leave request, a Drexel human resources benefit consultant advised Carlton that Watson had a number of unauthorized absences that were not approved for FMLA. On May 19, 2017, a

Guardian employee emailed Drexel's Human Resources and Benefits
Department and advised that Watson's intermittent leave had
previously been denied due to incomplete certification but that
"[t]he medical on file does support the entire requested period.
Per our process, the employer has the option to overturn the
denied period or allow the period to remain in a denied status.
. . . [P]lease advise if you'd like to overturn the denied
period and I'll update the claim accordingly." Pl.'s Resp. to
Mot. for Summ. J. Ex. F (ECF No. 27).

On May 24, 2017, Carlton advised Watson that her employment
was "on hold" because of the unauthorized absences. SUMF Ex. D,
Pl. Dep. 128:16-21. Watson told Carlton that the information
Guardian provided to Drexel was incorrect and that her physician
had submitted the appropriate paperwork.

On May 31, 2017, Drexel contacted Guardian to inquire about
the status of Watson's documentation. Guardian advised Drexel
that the documentation received in February 2017 was incomplete
because Watson's physician did "not provide a frequency or
duration for incapacity or office visits." Id. Ex. AA.

On June 8, 2017, Carlton met with Watson and
representatives from her union to discuss her absences during
the period in which she had been denied leave. He advised her
that her employment was being placed "on hold." Also on that
date, Watson forwarded Guardian's notices regarding her June 2,

7

2016, through October 17, 2016, approved leave to Carlton via
email. Watson also returned to her physician's office, where she
received a copy of the fax verification forms indicating that
her physician had faxed paperwork to Guardian. She gave copies
of the fax verification forms to Carlton.

On June 21, 2017, Carlton again met with Watson and a
representative from her union to discuss her absences. Also on
that date, a Drexel human resources employee emailed Guardian
requesting "documentation that was sent out to [Watson] that
could help with the timeline" because "[Watson] is disputing the
information that you have provided." Id. Ex. HH. On June 22,
2017, a Guardian employee replied to the email, advising that
"[a]n incomplete notice was sent to Lachelle on 02/28/17" and
"[a] denial was processed on 03/13/17 as updated certification
had not been submitted to cure the deficiency from the 2/28/17
notification. Medical certification was received on 5/18/17 and
processed 5/19/17." Id.

In late October or early November of 2017, Watson was
scheduled for surgery to remove her uterus. She learned her
employment had been terminated only when her surgeon's office
contacted her in advance of the scheduled surgery to tell her
that her health insurance had been cancelled.

## III. LEGAL STANDARD

Summary judgment is "appropriate only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Physicians Healthsource, Inc. v. Cephalon, Inc., 954 F.3d 615, 618 (3d Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). A fact is material "if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is genuine "if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. If the movant meets this obligation, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

At the summary judgment stage, the Court must view the facts "in the light most favorable to" the nonmoving party and "draw all reasonable inferences in favor" of that party. Young v. Martin, 801 F.3d 172, 174 (3d Cir. 2015).

## IV. DISCUSSION

### A.  ADA and PHRA Claims

The ADA and PHRA prohibit disability discrimination in employment. 42 U.S.C. § 12112(a); 43 Pa. Stat. § 955. Because

the two statutes are "'interpreted consistently' and share 'the same standard for determination of liability,'" courts may "analyze the statutes together and reference only the ADA." McNelis v. Pa. Power & Light Co., 867 F.3d 411, 414 (3d Cir. 2017) (quoting Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012)).

Watson raises ADA and PHRA claims under two theories: (1) failure to accommodate and (2) disability discrimination.

### 1.   Failure to accommodate

To prevail on an ADA failure to accommodate claim, a plaintiff must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." Capps v. Mondelez Glob., LLC, 847 F.3d 144, 157 (3d Cir. 2017) (quoting Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246 (3d Cir. 2006)).

When an employee requests an ADA accommodation, her employer has a duty "to engage in an 'interactive process' of communication with [the employee] so that the employer will be able to . . . assist in identifying reasonable accommodations where appropriate." Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 771 (3d Cir. 2004), superseded by statute on other grounds, ADA Amendments Act of 2008, Pub. L. No. 110-

325, § 6, 122 Stat. 3553, 3558 (2008). While the ADA itself does not refer to an "interactive process," applicable regulations provide that such a process "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3) (2019).

As part of the interactive process, both the employer and the employee "have a duty to assist in the search for an appropriate reasonable accommodation and to act in good faith." Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 330 (3d Cir. 2003) (quoting Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997)). Additionally, the process "must include sufficient notice to inform the employer that an employee is requesting an accommodation." Id. (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319-20 (3d Cir. 1999)).

Failure to participate in the interactive process is not a separate claim apart from a failure to accommodate claim. Instead, an employer's failure to engage in the interactive process supports a finding that the employer did not make a good faith effort to assist the employee in identifying reasonable accommodations. See id. at 325; see also Whelan v. Teledyne Metalworking Prod., 226 F. App'x 141, 147 (3d Cir. 2007) (non-precedential) ("Participation in the interactive process is

11

simply part of the employer's duty to determine if a reasonable accommodation exists.").

To show that an employer failed to participate in the interactive process, an employee must demonstrate: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for . . . her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Conneen, 334 F.3d at 330-31 (quoting Taylor, 184 F.3d at 319-20).

Watson alleges that Drexel failed to engage in the interactive process despite knowing that she had a disability and that she was "seeking, if not utilizing" FMLA leave for the purpose of managing her disability. Pl's Resp. to Mot. for Summ. J. 8. For the purposes of this motion only, Drexel concedes that Watson satisfies the first two elements required to demonstrate that Drexel failed to engage in the interactive process—i.e., that Drexel had knowledge of her disability and that she requested an accommodation for her disability by requesting intermittent FMLA leave. However, Drexel contends that Watson fails to establish the third prong—i.e., that Drexel did not make a good faith effort to assist Watson in seeking accommodations.

12

On this record, the Court concludes as a matter of law that
Drexel made a good-faith effort to assist Watson, including by
engaging in the interactive process. Around May of 2016, Watson
spoke with Carlton about her need to take time off due to her
medical condition. It is undisputed that outside of this
conversation, Watson did not speak to anyone at Drexel about
anything that would make it easier for her to work. In fact, she
testified that she believed that, had she done so, Carlton would
have provided her with any assistance she needed. Watson also
testified that she hid her illness "pretty well [and] didn't let
anybody know what was going on." SUMF ¶ 46.

During his conversation with Watson, Carlton encouraged her
to apply for FMLA leave. Drexel, through Guardian, approved
Watson for all such leave supported by the requisite
documentation, and Watson took that leave freely. At no time did
anyone at Drexel make negative comments to her about her use of
FMLA leave.

Drexel, through Guardian, denied Watson's leave only when
she failed to submit the necessary medical documentation
supporting her request. Watson neither contacted Drexel human
resources after receiving Guardian's denial letters nor
discussed the denial with Carlton prior to her meetings with him
in May and June of 2017. Although Drexel knew of Watson's
disability, it had every reason to believe that Guardian's

13

proffered reasonable accommodation—intermittent FMLA leave—was sufficient to accommodate Watson, and Watson never indicated otherwise. See Conneen, 334 F.3d at 331 ("[N]either the law nor common sense can demand clairvoyance of an employer in [the defendant's] position.").

Further, Drexel's decision not to overturn Guardian's denial of FMLA leave for the time period for which Watson had not provided timely and complete medical certification is not evidence of its bad faith, or of its failure to engage in the interactive process. Watson bore the responsibility for complying with Guardian's certification requirements for leave approval. See infra Section IV.B. She neither did so nor timely alerted anyone at Drexel that she had difficulty doing so.

Therefore, Drexel is entitled to summary judgment on Watson's ADA and PHRA failure to accommodate claims.

## 2.   Disability discrimination

To state a prima facie claim for disability discrimination under the ADA, a plaintiff must demonstrate: "(1) [s/]he is a disabled person within the meaning of the ADA; (2) [s/]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s/]he has suffered an otherwise adverse employment decision as a result of discrimination." Eshleman v. Patrick Indus., Inc., 961 F.3d 242, 245 (3d Cir. 2020).

14

The burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to ADA disability discrimination claims. E.g., Hatch v. Franklin Cnty., 755 F. App'x 194, 198 (3d Cir. 2018) (non-precedential). That framework proceeds in three steps: First, the plaintiff must establish a prima facie case of discrimination. If she does so, "the burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason'" for the adverse employment action. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (quoting McDonnell Douglas, 411 U.S. at 802). This burden is "relatively light" and is satisfied if the employer provides "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Id. (citing St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)).

Finally, "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." Id. To defeat a motion for summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764. Under

15

the burden-shifting framework, "the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. at 763 (citing Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981)).

Drexel concedes that Watson has established the first two elements of her prima facie case—i.e., that she is disabled within the meaning of the ADA and that she is otherwise qualified to perform the essential functions of the job. However, Drexel contends that Watson's case fails at the third prong because she cannot establish that the adverse employment decision—i.e., her termination—occurred because of her disability.

Even assuming, arguendo, that Watson can establish the third prong of her prima facie case, her claim fails at the burden-shifting stage of the analysis. Drexel has offered a legitimate, nondiscriminatory reason for Watson's termination—her excessive unauthorized absences—and Watson has not pointed to record evidence sufficient for a reasonable jury to find that this reason is pretextual.

Employers may lawfully require employees seeking FMLA leave to provide medical certification from a health care provider documenting the need for leave, including when the requested leave is an ADA accommodation. See 29 C.F.R. § 825.306(a) (2019); Sconfienza v. Verizon Pa., Inc., No. 3:05CV272, 2007 WL

16

1202976, at *30 (M.D. Pa. Apr. 23, 2007), <u>aff'd</u>, 307 F. App'x 619 (3d Cir. 2008).

Here, Watson testified that she was aware of the medical certification requirements for taking FMLA leave. She also testified that she never received written approval from Guardian to take FMLA leave during the time period that resulted in her termination. Watson had previously submitted the appropriate paperwork and received Guardian's approval, providing further evidence that she was aware of and able to comply with the certification requirements. <u>See Sconfienza</u>, 2007 WL 1202976, at *30 ("[T]here is no evidence that the plaintiff was unaware of the [certification] requirements, [with] which she had hitherto complied. She was required to show the defendants that her desired leave was validly requested and related to her medical condition."). Additionally, Carlton met with Watson to discuss her unauthorized absences and gave her an opportunity to supply the missing certifications prior to her termination.

These undisputed facts support a finding that Drexel terminated Watson's employment for a legitimate, nondiscriminatory reason: her attendance policy violation. <u>See Albright v. Trs. of Univ. of Pa.</u>, No. CV 19-00149, 2019 WL 5290541, at *7 (E.D. Pa. Oct. 18, 2019) (finding that an employee's tardiness and failure to adhere to the employer's call-out policy was a legitimate, nondiscriminatory reason for

discharge); see also Winder v. TriCounty Med. Equip., No. 18-CV-04016, 2020 WL 4211538, at *5 (E.D. Pa. July 23, 2020) (Robreno, J.) (finding that the plaintiff's excessive absences, which violated company policy, constituted a legitimate, nondiscriminatory reason for termination).

Watson fails to identify record facts for a reasonable jury to find that Drexel's proffered reason is pretextual. While she points to Drexel's decision not to overturn Guardian's prior denial of her FMLA leave despite Guardian's subsequently informing Drexel that the "medical on file does support the entire requested period," Pl.'s Resp. to Mot. for Summ. J. Ex. F (ECF No. 27), this evidence does not allow a factfinder to reasonably "disbelieve the employer's articulated legitimate reasons" or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. Watson bore the responsibility for providing timely and adequate medical certifications, and she failed to do so.

Therefore, Drexel is entitled to summary judgment on Watson's ADA and PHRA disability discrimination claims.

B.   __FMLA Claim__[4]

The FMLA entitles eligible employees to twelve weeks of leave during any twelve-month period due to the employee's serious health condition, inter alia, and prohibits employers from interfering with an employee's exercise of her FMLA rights. 29 U.S.C. §§ 2601(a)(1), 2615(a)(1).

To state a claim for FMLA interference, a plaintiff must establish: (1) she was an employee eligible for FMLA; (2) the defendant was an employer subject to FMLA; "(3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of . . . her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which . . . she was entitled under the FMLA." Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017).

Drexel does not dispute that Watson was an eligible employee under the FMLA, that Drexel is an employer subject to the FMLA, or that Watson requested FMLA leave. However, Drexel contends that it did not deny Watson FMLA benefits to which she was entitled since Watson failed to submit the necessary paperwork supporting her leave request.

---

[4]   Watson's Second Amended Complaint also alleged a violation of the FMLA under a theory of FMLA retaliation. Compl. Count III, ¶¶ 47-53 (ECF No. 17). At the September 17, 2020, oral argument, Watson's counsel indicated that Watson no longer wishes to pursue this claim. Tr. 11:3-5.

The Department of Labor's FMLA regulations provide that an
employer may require a health care certification supporting an
employee's request for FMLA leave. 29 C.F.R. § 825.305 (2019).
The employer "must give notice of a requirement for
certification each time a certification is required" and "advise
an employee of the anticipated consequences of an employee's
failure to provide adequate certification." Id. The employee
bears the "responsibility either to furnish a complete and
sufficient certification or to furnish the health care provider
providing the certification with any necessary authorization
from the employee . . . in order for the health care provider to
release a complete and sufficient certification to the employer
to support the employee's FMLA request." Id.

An employer must "advise an employee whenever the employer
finds a certification incomplete or insufficient" and "state in
writing what additional information is necessary to make the
certification complete and sufficient." Id. The regulations also
specify that "[a] certification that is not returned to the
employer is not considered incomplete or insufficient, but
constitutes a failure to provide certification." Id.

The record indicates that Drexel did not deny Watson FMLA
benefits she was entitled to receive. Drexel was entitled to
require CHPs for Watson's requested FMLA benefits, and Watson
bore the responsibility for complying with the certification

20

requirements. <u>See</u> <u>Sconfienza</u>, 307 F. App'x at 621 ("The burden was on [the plaintiff] to ensure that she complied with the procedures, so long as she had proper notice of the filing requirements. . . . Because [the plaintiff] never filed the appropriate personal certifications, she was not entitled to FMLA leave, and thus summary judgment was proper on the interference claim.").

In her response to Drexel's Motion for Summary Judgment, Watson does not point to record evidence sufficient for a reasonable jury to find that Drexel failed to provide Watson with adequate notice of the certification requirements or otherwise interfered with Watson's exercise of her FMLA rights.

Therefore, Drexel is entitled to summary judgment on Watson's FMLA claim.

### C.    **Damages**

Drexel also moves for summary judgment with respect to Watson's claims for damages. Because Watson's substantive claims do not survive summary judgment, the Court will deny as moot Drexel's request for summary judgment on the issue of damages.

## V.    **CONCLUSION**

For the foregoing reasons, the Court will grant Drexel's Motion for Summary Judgment on Watson's ADA, PHRA, and FMLA claims and deny as moot Drexel's Motion for Summary Judgment on

the issue of damages. An order consistent with this memorandum

will issue.